IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 1:18-00093

MICHAEL JUSTIN BAILEY and
SARAH K. BAILEY

**MEMORANDUM OPINION**

On November 19, 2018, the court denied defendants'[1] motion to dismiss Counts One through Four of the Indictment for lack of subject matter jurisdiction. The reasons for that decision follow.

### I.  Background

On May 1, 2018, a federal grand jury returned a seven-count indictment against defendants Michael Justin Bailey and Sarah K. Bailey as follows:

| | |
|---|---|
| Count One- | conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; |
| Count Two- | Hobbs Act Robbery on October 26, 2017, in violation of 18 U.S.C. § 1951; |
| Count Three- | Hobbs Act Robbery on November 5, 2017, in violation of 18 U.S.C. § 1951; |
| Count Four- | brandishing a firearm during and in relation to a crime of violence (expressly identified as Hobbs Act Robbery on November 5, 2017), in violation of 18 U.S.C. § 924(c)(1)(A)(ii); |

---

[1] Michael Justin Bailey filed the motion and codefendant Sarah K. Bailey joined in that motion. See ECF No. 37.

| | |
|---|---|
| Count Five- | felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);[2] |
| Count Six- | unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2);[3] and |
| Count Seven- | possessing a stolen firearm on November 5, 2017, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). |

Defendants are alleged to have conspired to rob, robbed, and brandished firearms while robbing two video poker parlors located within the Southern District of West Virginia. Defendants have moved to dismiss Counts One through Four of the indictment for lack of federal subject matter jurisdiction. Specifically, defendants allege that the regulation and operation of non-payout video poker gaming and parlors are all categorically intrastate activities which do not implicate the Commerce Clause and, therefore, are not offenses arising under the Hobbs Act.

On November 6, 2018, the court held a hearing on the motion to dismiss and heard from one witness on behalf of the government, Alice Renee Runion, the manager of the poker parlors that were robbed.

## II. Discussion

The Hobbs Act prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce or the

---

[2] Only Michael Bailey is charged in this count.

[3] Only Sarah Bailey is charged in this count.

movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). "Thus, the two elements of a Hobbs Act crime are: (1) robbery or extortion, and (2) interference with commerce." United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012) (citing Stirone v. United States, 361 U.S. 212, 218 (1960)). Under the Act, "robbery" is defined as:

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). Therefore, in order to obtain a conviction under this statute for a Hobbs Act robbery, the government must prove: "(1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the wrongful use of actual or threatened force, violence or fear or under color of official right; and (3) that the coercion occurred in such a way as to affect adversely interstate commerce." United States v. Reed, 780 F.3d 260, 271 (4th Cir. 2015) (citations and internal quotation marks omitted).

Defendants argue that because Daisy's III and Rosie's II (the two video poker parlors) are <u>intrastate</u> video parlors that the government cannot show a nexus with interstate commerce and, therefore, the Hobbs Act counts, as well as Count Four which is

3

dependent on the Hobbs Act robbery charged in Count Three, should be dismissed.

"The question of whether a defendant's acts satisfy the jurisdictional predicate of the Hobbs Act is one of law." United States v. Buffey, 899 F.2d 1402, 1407 (4th Cir. 1990). Therefore, "[t]he charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference." Stirone v. United States, 361 U.S. 212, 218 (1960).

Both Fourth Circuit and Supreme Court jurisprudence establish that the Hobbs Act's jurisdictional predicate is satisfied where the offense has a "minimal effect" on interstate commerce. United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012); see also Stirone, 361 U.S. at 215 (The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence.").

The United States Supreme Court recently reaffirmed that "[t]he language of the Hobbs Act is unmistakably broad." Taylor v. United States, 136 S. Ct. 2074, 2079 (2016). Regarding the Taylor holding, our appeals court wrote:

> Taylor involved the prosecution of a defendant who attempted to steal marijuana and cash from two drug dealers. See id. at 2078-79. Upholding the defendant's conviction, a near-unanimous majority

4

> characterized its holding as "straightforward and
> dictated by [the Court's] precedent." Id. at 2077.
> Specifically, the Court explained that Congress's
> recognized authority to regulate purely intrastate
> production, possession, and sale of marijuana—due to
> the aggregate effect of these activities on interstate
> commerce—compelled the conclusion that Congress may
> likewise regulate conduct that affects such activities.
> See id. at 2080 ("In this case, the activity at issue,
> the sale of marijuana, is unquestionably an economic
> activity. . . . It therefore follows as a simple
> matter of logic that a robber who affects or attempts
> to affect even the intrastate sale of marijuana . . .
> affects or attempts to affect commerce over which the
> United States has jurisdiction."). Taylor therefore
> establishes that, pursuant to its power under the
> Commerce Clause, Congress may proscribe violent conduct
> when such conduct interferes with or otherwise affects
> commerce over which Congress has jurisdiction. See id.
> Importantly, Congress may regulate violent conduct
> interfering with interstate commerce even when the
> conduct itself has a "minimal" effect on such commerce.
> Id. at 2079, 2081.

United States v. Hill, No. 16-4299, 700 F. App'x 235, 244-45 (4th Cir. Aug. 18, 2017).

Justice Thomas dissented in the Taylor case because, in his view, "[u]nder the Court's decision today, the Government can obtain a Hobbs Act conviction without proving that the defendant's robbery in fact affected interstate commerce—or any commerce." Id. at 2082. Nor has he been alone in his criticism. See United States v. Whitson, No. 15-6069, 664 F. App'x 503, 505 (6th Cir. 2016) ("Some justices and judges, it is true, have expressed skepticism about the reach of federal power in this area, noting the federal government's limited and enumerated powers and the oddity that it can punish local, small-scale

5

robberies that States traditionally prosecute.") (internal citations and quotations omitted); United States v. Rutherford, No. 06-1437, 236 F. App'x 835, 840 (3d Cir. 2007) ("At first blush, one could reasonably question, under our federalist system, whether an otherwise `garden-variety' armed robbery of individuals in a chiropractic office could constitute a federal crime. . . . As we discuss below, prosecution of these crimes by the Commonwealth of Pennsylvania might have been a more prudent course of action. However, federal courts—including our Court—have repeatedly and almost uniformly construed the Hobbs Act's interstate commerce requirement extremely broadly.").

In United States v. Addision, No. 00-4319, 7 F. App'x 282, 284 (4th Cir. 2001), the United States Court of Appeals for the Fourth Circuit found that the robbery of a South Carolina video poker casino could serve as the basis for a Hobbs Act conviction. In considering the interstate commerce requirement, the Addison court noted:

> [T]he manager of the video poker parlor testified that, not only did he advertise in interstate commerce, but that approximately eighty-five percent of his business came from outside of South Carolina. In addition, the manager noted a near-crippling drop-off in business following the robbery by Addison and his compatriots. This evidence was more than sufficient to show that Addison's robbery affected interstate commerce and vested jurisdiction in the district court.

Id.

With respect to the interstate commerce nexus in the instant case, Ms. Runion testified on behalf of Hollywood Gaming, Inc. Hollywood was the entity which owned the ten video parlors of which Ms. Runion was the manager. Ms. Runion testified that both of the affected video poker parlors are located in counties that border other states and that the company advertised to attract out-of-state customers. According to Ms. Runion, Hollywood locates its parlors near I-77 and Route 460 to specifically target out-of-state patrons from Virginia and to a lesser extent North Carolina. She further testified that approximately 80 percent of its customers are from outside the State of West Virginia.[4] Specifically, she testified that the three customers and one employee in Rosie's II at the time of the robbery were from Virginia. Ms. Runion also testified that there was a decline in business after the robberies and that, after the robbery on October 26, 2017, Daisy's III closed and never reopened. Ms. Runion further testified that she purchased supplies, such as snacks, coffee, water, paper towels, and toilet paper, in Virginia. According to Ms. Runion, cigarettes were sold to customers. Finally, Ms. Runion testified that the parlors had to fill out a federal tax form, W-2G, when patrons' winnings exceeded $1,199 and that those winnings are reported to

---

[4] A large number of those coming from North Carolina and Virginia where video poker gaming is illegal.

the State of West Virginia as well as the Internal Revenue Service.

Defendants counter that the foregoing does not satisfy the interstate commerce requirement. According to defendants, intrastate video poker gaming, even in the aggregate, does not constitute an activity substantially affecting interstate commerce which would or should fall within Congress' commerce power, and thereby be subject to regulation and punishment through the Hobbs Act. Defendants argue that Justice Thomas' dissents in Taylor and Gonzales v. Raich, 545 U.S. 1 (2005), should guide the court's analysis of the issue.

However, as the Sixth Circuit noted, "those expressions have come through dissents. As for majority decisions in this area, the rule is that `it makes no difference . . . that any actual or threatened effect on commerce in [this] particular case is minimal.'" Whitson, 664 F. App'x at 505 (quoting Taylor, 136 S. Ct. at 2081).

The court finds this case to be on par with Addison and that the interstate commerce nexus has been established. As in Addison, the majority of the customers were from out-of-state and the video poker parlors advertised to attract those customers. Also, like Addison, Ms. Runion testified regarding the decline in business. Finally, not only did Ms. Runion purchase supplies for the parlors out-of-state, the parlors also sold beer and

8

cigarettes to its customers.  See, e.g., United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012) (robbery of dry cleaner business had sufficient interstate commerce connection where, among other things, supplies were purchased from out of state); United States v. Rosario, Docket No. 01-1365, 48 F. App'x 12, 14 (2d Cir. Oct. 9, 2002) (affirming Hobbs Act robbery conviction where witness stated that store robbed sold cigarettes and "[w]ith a rudimentary knowledge of agriculture, the jury could conclude that the tobacco in cigarettes is grown outside New York").

For the foregoing reasons, the motion to dismiss was **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record, to the United States Marshal for the Southern District of West Virginia, and to the Probation Office of this court.

IT IS SO ORDERED this 30th day of November, 2018.

ENTER:

David A. Faber
Senior United States District Judge